UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BERNA WILLIAMS AND WILLIAM D. WILLIAMS,<br><br>    PLAINTIFFS,<br><br>vs.<br><br>BIOMET, INC. ET AL.,<br><br>    DEFENDANTS. | CAUSE NO. 3:14-CV-1955-RLM-CAN |

OPINION and ORDER

  Berna and William Williams brought suit in Missouri state court against four Biomet companies and Select Orthopedics, Inc., Biomet's distributor in Missouri. The Williamses allege that Berna Williams's M2a-Magnum hip implant caused her injury, and bring claims for negligence, strict product liability, misrepresentation, failure to warn, breach of implied warranty, breach of express warranty, loss of consortium, and violation of the Missouri Consumer Protection Act. The defendants removed the case to the Eastern District of Missouri based on diversity of citizenship under 28 U.S.C. § 1446, and the Judicial Panel on Multidistrict Litigation transferred the case into the Biomet multi-district litigation docket.

  This matter is before me on the Williamses' motion to remand, which argues that there isn't complete diversity of citizenship. For diversity purposes,

the Williamses and Select are citizens of Missouri,[1] and the four Biomet defendants are citizens of Indiana. Biomet designed and manufactured Mrs. Williams's hip implant, while Select marketed, sold, and distributed the implant. The defendants removed this case to federal court on the argument that Select's citizenship should be disregarded for diversity purposes, because Select was fraudulently joined due to the Williamses' inability to prevail on any claim against it. The Williamses now argue that removal was improper, because they have valid claims against Select in state court, so joinder of Select wasn't fraudulent.

For a federal court to have jurisdiction over a suit based on diversity, there must be complete diversity of citizenship – no defendant may share the citizenship of any plaintiff. 28 U.S.C. § 1332(a). A plaintiff can't fraudulently join a non-diverse defendant solely for the purpose of destroying diversity jurisdiction. Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 763 (7th Cir. 2009). "Fraudulent" in this context doesn't necessarily mean bad faith on the

---

[1] In their response to the remand motion, the defendants point out that the complaint alleges the Williamses are "residents" of Missouri, but says nothing about their citizenship. To the extent that the defendants argue remand is inappropriate because the Williamses' citizenship hasn't been adequately established, they are judicially estopped from making such an argument. In its Notice of Removal, Biomet alleged that the Williamses "are citizens and residents of St. Louis County, in the State of Missouri." Having itself relied on the Williamses' Missouri citizenship and successfully removed this case based on it, Biomet can't argue to the contrary now. *See* Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 795 (7th Cir. 2013) (discussing the equitable doctrine of judicial estoppel as one that "protects the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.").

part of a plaintiff; it means that the claims against the non-diverse defendant have no realistic chance of success. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). To decide whether joinder was fraudulent in this sense, a court must ask whether, "after resolving all issues of fact and law in favor of the plaintiff . . . there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." Schur v. L.A. Weight Loss Ctrs., 577 F.3d 752, 764 (7th Cir. 2009) (internal quotation marks omitted). The party seeking removal – or, as here, resisting remand – bears the heavy burden of showing that joinder was fraudulent. Id. at 763. If the removing defendant meets its heavy burden of demonstrating fraudulent joinder, the district court "may 'disregard' the nondiverse defendant" for jurisdictional purposes, such that the fraudulent joinder doctrine acts as "an 'exception' to the requirement of complete diversity." Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013) (quoting Walton v. Bayer Corp., 643 F.3d 994, 999 (7th Cir. 2011)).

In deciding whether a defendant has been fraudulently joined, a court isn't limited to the pleadings and may consider summary judgment-type evidence such as affidavits. Millman v. Biomet Orthopedics, Inc., No. 3:13-CV-77 RLM-CAN, 2013 WL 6498394, at *2 (N.D. Ind. Dec. 10, 2013); Siegel v. H Group Holding, Inc., No. 07 C 6830, 2008 WL 4547334, at * 3 (N.D. Ill. Apr. 9, 2008) ("[A] limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case."). The fraudulent joinder analysis requires a district court to apply state law to determine whether the plaintiff

-3-

would have any reasonable possibility of success against the non-diverse defendant in state court. Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 764 (7th Cir. 2009). The parties agree that Missouri law governs this case.

The defendants believe Select can't be held liable in Missouri court due to Missouri's Innocent Seller Statute, which protects mere sellers from product liability. The statute provides:

> 1. A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim as provided in this section.
> 2. This section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim.

(Mo. Ann. Stat. § 537.762). The defendants argue that because this statute will result in the immediate dismissal of any claim against Select in Missouri court, Select's citizenship doesn't count for diversity analysis and this case was properly removed.

While the Innocent Seller Statute may apply to several of the Williamses' claims, the statute's plain language doesn't appear to reach others – and joinder is proper if even one state court claim has a reasonable probability of success. Count 3 of the complaint, titled "Misrepresentation against Select," is the clearest example of a claim to which the Innocent Seller Statute doesn't seem to apply. In that count, the Williamses allege that Select made various material misrepresentations and omissions about the Magnum implants in communications to the Williamses and to their orthopedic surgeon, Dr. Maylack,

and that the Williamses justifiably relied on these misrepresentations and consequently suffered a loss.

Select's liability under this theory isn't based solely on its role as seller, as the Innocent Seller Statute requires; rather, liability is based on Select's misrepresentations and omissions in communicating with the Williamses and their doctor about the implant. The heart of the misrepresentation claim isn't Select's status as seller, but rather particular false statements it made in the course of business. The Missouri Innocent Seller Statute doesn't protect sellers or middlemen from claims that depend on their own culpable conduct, rather than simply on their status as sellers of an allegedly defective product. *See* Malone v. Schapun, Inc., 965 S.W.2d 177, 182 (Mo. Ct. App. 1997), *opinion adopted and reinstated after retransfer* (June 1, 1998) (noting that under the Innocent Seller Statute, "a seller is still liable for its own negligence or other conduct other than its status as a seller in the stream of commerce.").

That the Innocent Seller Statute doesn't apply to claims against sellers for misrepresentation is consistent with the purpose of the statute, which is generally to "to protect a seller from becoming principally liable when there is a culpable manufacturer or other culpable upline supplier." Malone v. Schapun, 965 S.W.2d at 182. Unlike most types of product liability and failure to warn claims, a misrepresentation claim doesn't necessarily involve a culpable upstream manufacturer at all; even a completely defect-free product manufactured by a wholly innocent manufacturer can give rise to a claim for

misrepresentation, if the seller lies to a consumer about the product's features. The statute's purpose is to protect innocent sellers where culpable manufacturers can be sued instead. A misrepresentation claim involves a seller who isn't innocent and a manufacturer who may or may not be culpable, so it's a poor fit for the Innocent Seller Statute.

The defendants insist that the Innocent Seller Statute applies to all the Williamses' claims, but don't discuss why the statute would apply to misrepresentation claims specifically. Although they bear the burden of showing that joinder is fraudulent (and therefore that the Williamses' claims are doomed), the defendants point only to cases applying the statute to bar product liability and failure to warn claims. They identify no authority applying the Innocent Seller Statute to defeat a misrepresentation claim. At least one federal court applying Missouri law has denied a motion to remand when fraud and misrepresentation were alleged, reasoning that because the complaint alleged that the non-diverse seller knew of the product's history of failures and misrepresented them, the Innocent Seller Statute didn't apply and the plaintiff could state a colorable claim against the seller. *See* Morrison v. Sperian Prot., No. 4:09CV798 JCH, 2009 WL 2253464, at *4 (E.D. Mo. July 28, 2009). In the absence of any authority to the contrary, I find this reasoning persuasive – particularly because in the fraudulent joinder analysis, I must view all factual and legal questions in the light most favorable to the Williamses. Schur v. L.A. Weight Loss Ctrs., 577 F.3d at 764.

In their Notice of Removal, the defendants argued that the Williamses can't bring a colorable claim against Select for misrepresentation because the affidavit of David Whitman, the principal for Select, establishes that Select never made any representations to the Williamses at all. Mr. Whitman testifies that to his personal knowledge, no representative of Select "has ever had any direct dealings or communications with" the Williamses. This testimony doesn't eliminate all reasonable possibility that the Williamses can prevail on their misrepresentation claim against Select. For one thing, Mr. Whitman's testimony denies only the alleged communications between Select and the Williamses themselves, while the misrepresentation count in the complaint also alleges that Select made misrepresentations to the Williamses' orthopedic surgeon. Moreover, Mr. Whitman testifies only that he has no personal knowledge of agents of Select communicating with the Williamses, which doesn't prove that no such communication could have taken place. In light of the complaint's allegations that Select misrepresented facts about the Magnum implant to the Williamses and their doctor, Mr. Whitman's affidavit isn't enough to satisfy the defendants' heavy burden of showing no reasonable possibility that the Williamses could prevail on a misrepresentation claim against Select in a Missouri court.

Because the Williamses state a misrepresentation claim such that Missouri law might impose liability upon Select under the facts of this case, it isn't necessary to address the other issues raised by the parties – such as whether another subsection of the Innocent Seller Statute limits the statute's

jurisdictional effects, and if so whether that subsection is unconstitutional. The misrepresentation claim at least is not clearly barred by Missouri's Innocent Seller Statute, and therefore Select's joinder is not fraudulent, there is no complete diversity of citizenship, and this court lacks subject matter jurisdiction.

Accordingly, the Williamses' motion to remand (Doc. No. 73) is GRANTED. This case is hereby REMANDED to the Circuit Court of St. Louis County, Missouri for further proceedings.

SO ORDERED.

ENTERED: <u>February 29, 2016</u>

<u>      /s/ Robert L. Miller, Jr.      </u>
Judge
United States District Court